# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Jun 21 2019, 7:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Don R. Hostetler
Hostetler Law LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination
of the Parent Child Relationship
of A.B. (Child) and S.B.
(Mother);

S.B. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner*

and

June 21, 2019

Court of Appeals Case No.
19A-JT-58

Appeal from the Marion Superior
Court

The Honorable Marilyn Moores,
Judge

The Honorable Larry Bradley,
Magistrate

Trial Court Cause No.
49D09-1806-JT-792

Child Advocates, Inc.

*Appellee-Guardian Ad Litem*

**May, Judge.**

S.B. ("Mother") appeals the termination of her parental rights to A.B. ("Child"). She argues the Department of Child Services ("DCS") did not provide sufficient evidence to support the conclusions that: (1) the conditions under which Child was removed from Mother's care would not be remedied; (2) the continuation of the Mother-Child relationship posed a threat to Child's well-being; (3) termination was in Child's best interests; and (4) there existed a satisfactory plan for Child's placement following termination of Mother's parental rights. We affirm.

# Facts and Procedural History

Mother[1] gave birth to Child on August 31, 2016. Mother was seventeen years old when Child was born. On September 22, 2016, DCS removed Child from Mother's care based on neglect and Mother's drug use. DCS filed a petition to declare Child a Child in Need of Services ("CHINS") on October 4, 2016.

---

[1] Child's father executed consent to Child's adoption and does not participate in this appeal.

Child was placed with his paternal grandmother, where he has remained during the proceedings.

[3] On January 24, 2017, Mother admitted Child was a CHINS. The trial court entered its parental participation order the same day and ordered Mother to engage in a home-based case management program and follow all recommendations; submit to random drug or alcohol screens;[2] participate in and complete substance abuse treatment; and participate in and complete individual, group, recreational, and family therapies. The court also directed Mother to participate in visitation with Child on a consistent basis.

[4] On June 19, 2018, the trial court changed Child's permanency plan to adoption based on Mother's lack of participation in services and inconsistent visitation with Child. On July 9, 2018, DCS filed a petition to involuntarily terminate Mother's parental rights to Child. On November 26, 2018, the trial court held a hearing on the termination petition and Mother did not attend. On December 11, 2018, the trial court issued an order involuntarily terminating Mother's parental rights to Child.

# Discussion and Decision

---

[2] The order indicated, regarding drug screens, that "[a]ny request for drug screen that is not completed in a timely manner will result in a positive result indication." (Ex. Vol. I at 74.)

[5] We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied, trans. denied, cert. denied* 534 U.S. 1161 (2002).

[6] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[7] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[8] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9] Mother does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem

does not challenge the findings of the trial court, they must be accepted as correct."). Mother challenges the trial court's conclusions that the conditions under which Child was removed were not likely to be remedied and continuation of the parent-child relationship posed a threat to Child's well-being. Mother also argues termination is not in Child's best interests and no satisfactory plan existed for Child after termination.

## Reasonable Probability Conditions Would Not Be Remedied

[10] The trial court must judge a parent's fitness to care for her child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Child was removed from Mother's care due to neglect and to Mother's admitted substance abuse. Regarding whether there existed a reasonably probability the conditions that prompted Child's removal from Mother's care would not be remedied, the trial court evaluated whether there was a reasonable probability that Mother's neglectfulness and drug use would be remedied, and the court found:

> 10. [Mother] completed an inpatient drug treatment stay but no reports were received from an outpatient treatment referral. [Mother] had admitted to continued marijuana and methamphetamine use after her inpatient treatment.

11. Although [Mother] was to submit to weekly random drug screens, she failed to do so, and last screened in January of 2018.

12. During much of the CHINS case, [Mother] was living with relatives and other people in a chaotic and toxic environment inappropriate for children. The family has gone through at least two evictions in the past year and have resided in places lacking utilities. At times [Mother] has slept in cars.

* * * * *

15. [Mother] obtained employment a few times during case management but none lasting more than two weeks.

16. [Mother] made no progress in independent skills and appropriate housing. She failed to follow up on suggested use of food pantries.

17. After attending a few classes, [Mother] failed to work on obtaining a G.E.D.

18. Case management sessions were to take place once a week. [Mother] only went through two or three separate case management sessions.

19. Reanda Jones, the case manager, also supervised parenting time between [Mother] and [Child], and tried to implement some case management during visits.

20. Parenting time was very inconsistent. [Mother] could be loving at times and inattentive or inappropriate at times.

21. [Child] shared as [sic] close bond with [Mother] during the times [Mother] was consistent in exercising parenting time.

22. [Mother's] last visit was in May of 2018.

23. Home based case management closed unsuccessfully in June of 2018, without goals being accomplished.

24. Home based therapy commenced in approximately April of 2018.

25. [Mother] presented as impulsive and as having poor decision making skills. She continued to choose a nocturnal schedule which was detrimental to progressing in services.

* * * * *

27. [Mother] self-harms, and uses illegal substances as a way to self-medicate. She has also sustained injuries from lashing out and striking walls or cars.

28. Therapy was discharged unsuccessfully in June of 2018, when [Mother] chose not to continue with the service.

(App. Vol. II at 14-15) (errors in original). Based on those findings, the trial court concluded:

There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside the home will not be remedied by [Mother,] who has made little to no progress toward reunification in the twenty-five months that [Child] has been removed from the home, and demonstrates a lack of motivation to change and make progress.

(*Id*. at 15.)

[11]     Mother argues the trial court did not consider Mother's fitness to care for Child as of the date of the termination hearing when determining if the conditions under which Child was removed from her care would be remedied. Mother chose not to attend the termination hearing and, therefore, was unable to provide testimony regarding her recent efforts. If error occurred, it was invited by Mother. *See Barrix v. Jackson*, 973 N.E.2d 22, 27 (Ind. Ct. App. 2012) (invited error is not reversible error), *trans. denied*.

[12]     Moreover, while a trial court must consider a parent's ability to care for a child at the time of the termination hearing, a court may "disregard the efforts . . . made only shortly before termination and weigh more heavily [a parent's] history of conduct prior to those efforts." *In re K.T.K.*, 989 N.E.2d 1225-1234 (Ind. 2013). Mother has a history of substance abuse and general inability to care for Child including unstable housing and employment, inattentiveness at visitation, inability to provide basic necessities such as diapers for Child during visitation, and non-compliance with services. Mother's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The evidence before the court supported the court concluding the circumstances would not be

remedied.[3] *See In re K.T.K.*, 989 N.E.2d at 1234 (mother's recent sobriety outweighed by her history of substance abuse and neglect of her children).

## Best Interests

[13]     In determining what is in Child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Child's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[14]     Regarding Child's best interests, in addition to those findings quoted *supra*, the trial court found:

---

[3] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need decide only if the trial court's conclusion supports one of these two requirements. *See In re L. S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights). Because the trial court's findings supported its conclusion that the conditions under which Child was removed from Mother's care would be not be remedied, we need not consider Mother's argument regarding whether the continuation of the Mother-Child relationship poses a risk to Child's well-being.

4.  Child was removed from the care of [Mother] [on September 22, 2016,] and was never placed back in-home.

* * * * *

33.  [Child] has been placed with his parental grandmother since he was five weeks old.  [Child] is extremely bonded with his caregiver who is meeting all his needs.

34.  [Child's] placement with his grandmother is preadoptive.

(App. Vol. II at 14-15.)  Based thereon, the trial court concluded "[t]ermination of the parent-child relationship is in the best interests of [Child].  Termination will allow him to be adopted into a stable and permanent home where his needs will be safely met." (*Id*. at 16.)

[15]    Mother argues termination is not in Child's best interests because DCS did not present clear and convincing evidence that the conditions under which Child was removed from her care would not be remedied and that the continuation of the Mother-Child relationship would threaten Child's well-being.  As we have held DCS presented sufficient evidence to support the trial court's conclusion under Indiana Code section 31-35-2-4(b)(2)(B), Mother's argument fails. Mother was non-compliant with services, inconsistent with visitation, and Child lived outside of her care for the majority of his life.  Mother's argument to the contrary is an invitation for us to reweigh the evidence or judge the credibility of witnesses, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

The evidence is sufficient to support the trial court's determination. *See In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) (termination in child's best interests based on totality of the evidence, including parents' substance abuse and non-compliance with ordered services), *trans. denied.*

## Satisfactory Plan

[16] Pursuant to Indiana Code section 31-35-2-4(b)(2)(D), parental rights cannot be terminated unless DCS provides sufficient evidence of a satisfactory plan for the care and treatment of the child following termination. We have held "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.,* 804 N.E.2d at 268. Regarding Child's placement after termination, the trial court noted the plan was adoption by paternal grandmother, with whom Child had been placed since his removal from Mother's care. Mother argues this was not a satisfactory plan for Child's care and treatment after termination because DCS had not met paternal grandmother's life partner to determine if he was a suitable caregiver.

[17] During the termination hearing, the family case manager, James Summons, admitted he had not observed Child's interaction with paternal grandmother's life partner, but Summons also testified he did not "have any reason to believe [paternal grandmother's life partner] is an inappropriate caregiver[.]" (Tr. Vol. II at 81.) Mother's counsel did not question whether paternal grandmother's life partner was an appropriate caregiver during the hearing, and on appeal she

does not suggest he is necessarily inappropriate. Mother's argument is an invitation for us to reweigh evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). Evidence that the plan was for Child to be adopted by paternal grandmother was sufficient to support the trial court's conclusion. *See In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008) (adoption is satisfactory plan for child's care and treatment after termination).

# Conclusion

[18] DCS provided sufficient evidence to support the trial court's unchallenged findings, which supported its conclusions that the circumstances under which Child was removed from Mother's care would not be remedied; termination was in Child's best interests; and there existed a satisfactory plan for Child's care following termination. Accordingly, we affirm.

[19] Affirmed.

Mathias, J., and Brown, J., concur.